**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RANDY L. MILLER, et al.,**

     **Plaintiffs,**

                           **Case No. 2:14-cv-101**
     **v.**                      **JUDGE GREGORY L. FROST**
                                **Magistrate Judge Mark R. Abel**

**RANDALL MEYER., et al.,**

     **Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court for consideration of the following motions and corresponding briefs: (1) Defendants Brown County Prosecutor's Office and Jessica A. Little's motion to dismiss (ECF No. 19), Plaintiffs' memorandum in opposition (ECF No. 33), and Brown County Prosecutor's Office and Little's reply memorandum (ECF No. 36); (2) Defendants Ronald Nichols and Thomas Charles' motion to dismiss (ECF No. 25), Plaintiffs' memorandum in opposition (ECF No. 34), and Nichols and Charles' reply memorandum (ECF No. 40); (3) Defendants Sean Logan and Anthony J. Celebrezze's motion to dismiss (ECF No. 27), Plaintiffs' memorandum in opposition (ECF No. 35), and Logan and Celebrezze's reply memorandum (ECF No. 41).  For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Brown County Prosecutor's Office and Little's motion (ECF No. 19), **GRANTS IN PART** and **DENIES IN PART** Nichols and Charles' motion (ECF No. 25), and **GRANTS** Defendants Logan and Celebrezze's motion (ECF No. 27).

## I.     BACKGROUND

Plaintiffs Randy L. Miller, James E. Lehman, Jr., Michele E. Ward-Tackett, David M. Graham, and Todd E. Haines are current and former employees of the Ohio Department of Natural Resources ("ODNR").  The facts set forth below are taken from Plaintiffs' Amended Complaint and are assumed true for purposes of this Opinion and Order.

In 2006, non-party Allan Wright, a Wildlife Officer for the Brown County Department of Wildlife ("DOW"), impermissibly provided his home address to a South Carolina friend so that his friend could obtain an Ohio hunting license at the rate reserved for Ohio residents.  After learning of the offense, the DOW conducted an internal investigation into Wright's misconduct. Wright received a verbal reprimand for "failure of good behavior."  (ECF No. 16 ¶ 27.)  The ODNR, which oversees the DOW, approved the sanction.

In September 2009, a confidential informant reported to the Ohio Office of the Inspector General ("OIG") that Plaintiffs—Wright's supervisors at the DOW and ODNR—failed to properly investigate Wright's misconduct.  The OIG requested that Defendant Logan (Director of the ODNR) investigate that report.  Logan did so and informed the OIG that the DOW had previously investigated and reprimanded Wright.

Apparently unsatisfied with Logan's report, Defendant Charles (Inspector General of the OIG) assigned Defendant Nichols (a Deputy Inspector for the OIG) (collectively, "OIG Defendants") to further investigate the circumstances surrounding Wright's misconduct.  Nichols interviewed Plaintiffs, who informed him that the DOW already had investigated the incident. Nichols did not question anyone involved in the prior investigation.

Despite having knowledge of the facts underlying the Wright incident, neither Logan nor ODNR Deputy Director Celebrezze (collectively, "ODNR Defendants") came forward to assist Nichols with his investigation.  ODNR Defendants allegedly feared getting involved in the investigation because of the upcoming gubernatorial election.

In March 2010, Inspector General Charles issued an investigative report to the ODNR and the Governor's Office based on Nichols' findings.  The report—which allegedly contained false and/or misleading information—concluded that Wright had committed criminal conduct and that Plaintiffs had failed to report that conduct.  Charles then forwarded the OIG's report to the Franklin County Prosecutor's Office, which refused to prosecute Plaintiffs due to a lack of supporting evidence.

Despite that refusal, Charles began "shopping" the OIG's report to other prosecutors' offices in hopes of obtaining criminal indictments against Plaintiffs.  Charles allegedly wanted the criminal indictments "in order to disparage the current Governor Strickland administration." (ECF No. 16 ¶ 35.)

The Brown County Prosecutor's Office received the OIG's report.  At that time, Defendant Little (a prosecutor with the Brown County Prosecutor's Office) met with OIG Defendants Charles and Nichols to discuss indicting Plaintiffs.  Defendant Little allegedly had an interest in obtaining indictments against Plaintiffs because a new gubernatorial administration would help one of her colleagues get appointed as the next Director of the ODNR.

During their meeting, Defendant Little and OIG Defendants allegedly manufactured evidence and/or testimony against Plaintiffs.  Although Plaintiffs do not clearly explain these allegations, they suggest that the manufactured evidence relates to the DOW's internal

investigation of Wright.  More specifically, Little and OIG Defendants allegedly manufactured evidence to make it appear that Plaintiffs had never investigated Wright, when in fact they had.

In April 2010, Defendant Little presented the allegedly manufactured evidence and testimony to a grand jury, which indicted Plaintiffs on one count of obstructing justice and one count of complicity to obstruct justice.  Both charges are fifth-degree felonies.  After warrants were issued for their arrest, Plaintiffs voluntarily turned themselves in, at which time they were arrested, searched, fingerprinted, photographed, and arraigned.

Following the indictment, Plaintiffs moved to suppress certain evidence that allegedly served as the basis for the indictments.  The motion went through several stages of review: the trial court granted it in October 2010, an Ohio appeals court reversed in January 2012, and the Ohio Supreme Court reversed the appeals court and reinstated the trial court's decision in May 2013.  At that time, the criminal charges against Plaintiffs were dismissed.

Several events occurred while the parties awaited the decisions on the motion to suppress. First, in April 2010, Plaintiffs were placed on administrative leave with pay in light of the pending felony charges.  Plaintiffs returned from administrative leave on November 19, 2010, shortly after the November 2, 2010 gubernatorial election.

Second, in December 2010, the ODNR allegedly resumed its administrative investigation of Plaintiffs' handling of the Wright incident.  ODNR Defendants Logan and Celebrezze allegedly had knowledge of facts relevant to the investigation; however, they refused to be interviewed and/or make statements about the same.  This second ODNR investigation allegedly "exonerated" Plaintiffs from wrongdoing, (ECF No. 16 ¶ 49), although Plaintiffs do not explain how or why.

Third, in May 2011, Defendants Brown County Prosecutor's Office and Little (collectively, "Prosecutor Defendants") notified the Brown County Clerk of Courts of a report of convictions that erroneously included Plaintiffs' names.  As a result, the Brown County Clerk of Courts included Plaintiffs' names in their Monthly Report of Convictions to the Boards of Election, which led to Plaintiffs (excluding Plaintiff Miller) being informed by their County Board of Elections that they could not vote in the November 2011 general election.  Prosecutor Defendants allegedly knew that the report of convictions was false but reported it to the Clerk of Courts anyway in attempt to punish Plaintiffs.

As a result of the foregoing events, Plaintiffs Lehman, Haines, and Ward-Tackett received working suspensions from their jobs.  Lehman and Miller eventually were forced to resign.  Haines and Ward-Tackett were forced to transfer to new positions with reduced responsibilities.  Graham was fired and precluded from taking advantage of certain fall-back rights.

Plaintiffs filed this lawsuit on January 28, 2014.  The Court now considers Defendants' motions to dismiss all claims against them.

## II.    ANALYSIS

### A.  Standard of Review

Dismissal pursuant to Rule 12(b)(6) is proper if the complaint fails to state a claim upon which the Court can grant relief.  Fed. R. Civ. P. 12(b)(6).  The court must construe the pleading in favor of the party asserting the claim, accept the factual allegations contained therein as true, and determine whether those factual allegations present a plausible claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  To be considered plausible, a claim must be more

than merely conceivable.  *Id.* at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  "Factual content" requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  In other words, a court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The defendant bears the burden of demonstrating that the plaintiff failed to state a claim for relief.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### B.  Claims Three, Four, Five, Six, Eight, and Nine

The Court begins its analysis by weeding out those claims that are easily dismissed.  In their memoranda in opposition to Defendants' motions to dismiss, Plaintiffs concede that their state-law claims against state employees fail to state a claim for relief.  (ECF No. 34, at 2 n. 1; ECF No. 35, at 2 n.1.)  The Court therefore **GRANTS** OIG Defendants' and ODNR Defendants' motions to dismiss Claims Three (malicious prosecution under state law) and Eight (violation of Ohio Revised Code Title 124).  The Court similarly **GRANTS** Defendants' motions to dismiss Claim Nine (violation of Plaintiffs' right to vote), to the extent that claim is premised on rights secured by the Ohio Constitution.

Claim Four asks for punitive damages against all individual defendants.  Because "[p]unitive damages are a remedy and not a separate cause of action," *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1086 (S.D. Ohio 2013), however, Plaintiffs' independent claim for punitive damages must fail.  The Court therefore **GRANTS** Defendants' motions to dismiss Claim Four.

Claim Five purports to assert a claim for violations of the First Amendment to the United States Constitution.  Despite the fact that each Defendant moved to dismiss this claim, however, Plaintiffs did not address this claim in their memoranda in opposition.  That fact alone warrants dismissal of Claim Five.  *See, e.g., id.* at 1081 (holding that a plaintiff's failure to defend a claim in his or her memorandum in opposition to the defendant's Rule 12(b)(6) motion is sufficient grounds to dismiss that claim).  Claim Five fails for the additional reason that the First Amendment does not protect speech that public employees are required to give in the course of their job duties, *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007), and the only alleged speech or expression in this case took place during official investigations to which Plaintiffs were required to respond.  Accordingly, because Plaintiffs' allegations do not involve protected speech, the Court **GRANTS** Defendants' motions to dismiss Claim Five.

Plaintiffs similarly appear to have abandoned Claim Six, in which they allege that the adverse employment actions taken against them constitute a deprivation of life, liberty, or property without due process of law in violation of the Fourteenth Amendment.[1]  Dismissal of Claim Six therefore is proper.  *See Shoup*, 974 F. Supp. 2d at 1081.  To the extent Plaintiffs asserted Claim Six against Prosecutor Defendants and OIG Defendants, it fails for the additional reason that Plaintiffs did not allege any facts linking those defendants to the ODNR's decision to terminate Plaintiffs' employment and/or transfer them.  As such, the Court **GRANTS** Defendants' motions to dismiss Claim Six.

In Claim Nine, Plaintiffs allege that Defendants violated their (Plaintiffs') right to vote

---

[1] Although Plaintiffs address the Fourteenth Amendment in their memoranda in opposition to Defendants' motions, they only do so in the context of defending their § 1983 claims (which they asserted as separate claims for relief in Counts One and Two).

under the United States Constitution.  In their memoranda in opposition to Defendants' motions

to dismiss this claim, Plaintiffs do not offer any arguments or caselaw in support of their claim

other than the statement: "[t]he Ninth Claim is straightforward and it is a claim for denial of

[Plaintiffs'] right to vote."  (ECF No. 33, at 11.)

      The only tie between Defendants' actions and Plaintiffs' right to vote is the allegation

that Prosecutor Defendants sent an erroneous Report of Conviction to the Board of Elections,

which purportedly led to Plaintiffs' disenfranchisement.  Accordingly, because Plaintiffs failed

to plead a causal connection between the remaining Defendants' conduct and Plaintiffs' alleged

injury, the Court **GRANTS** OIG Defendants' and ODNR Defendants' motions to dismiss Claim

Nine.

      The claim against Prosecutor Defendants presents a more difficult question.  The

Supreme Court has repeatedly held that the right to vote is "a fundamental political right" that is

"preservative of all rights."  *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972) (quoting *Reynolds v.

Sims*, 377 U.S. 533, 562 (1964).  Citizens, therefore, have "a constitutionally protected right to

participate in elections on an equal basis with other citizens in the jurisdiction."  *Id.*  In some

jurisdictions, an official can be liable for any "willful conduct" that disenfranchises a citizen.

*See, e.g., Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975).  Even if the Sixth Circuit were

to adopt this rule, however, Plaintiffs' claim still fails because there exists an administrative

remedy to rectify the exact situation Plaintiffs faced.  Several courts have persuasively concluded

that the deprivation of the right to vote ceases to be a cognizable claim when adequate state

corrective procedures would have cured any such deprivation.  *See Griffin v. Burns*, 570 F.2d

1065, 1077 (1st Cir. 1978); *see also Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970).  The

rationale behind those cases is that, where adequate state corrective procedures exist, the citizen was not actually disenfranchised because he or she still could have cast a vote.

Here, Prosecutor Defendants point to Ohio Revised Code Section 3505.181(A)(1) as the administrative remedy for Plaintiffs' predicament. That section permits individuals to cast provisional ballots when their names do not appear on the list of registered voters, which was the exact situation in which Plaintiffs found themselves. Given that fact, the Court cannot conclude that Prosecutor Defendants' actions in sending an erroneous Report of Conviction to the Board of Elections constitutes a cognizable claim for relief. The Court therefore **GRANTS** Prosecutor Defendants' motion to dismiss Claim Nine.

Having weeded out those claims, the Court is left with Claims One and Two (violations of 42 U.S.C. § 1983) and Claim Seven (conspiracy under § 1983). The Court addresses each of those claims below.

### C.  Claims One and Two (Violations of the Fourth, Fifth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983 Against All Defendants)[2]

The crux of Plaintiffs' § 1983 claim is malicious prosecution. Plaintiffs acknowledge as much in their memoranda in opposition to Defendants' motions. *See* ECF Nos. 34 & 35, at 2 n.1. As such, the Court will analyze Claims One and Two as § 1983 claims for violations of the Fourth Amendment. *See, e.g., Miller v. Delaware Cnty. Comm'rs*, No. 2:13-CV-501, 2014 WL 457552, at *7 (S.D. Ohio Feb. 4, 2014); *Collins v. Guinther*, 238 F. Supp. 2d 958, 961 (S.D. Ohio 2002). To the extent Plaintiffs intended to assert independent § 1983 claims under the

---

[2] Plaintiffs suggest in their memoranda in opposition to Defendants' motions that they also brought a § 1983 claim for violations of the Sixth Amendment, but the Amended Complaint does not provide fair notice of such a claim. Accordingly, and because a plaintiff cannot amend his or her complaint in a memorandum in opposition to a motion to dismiss, the Court will not address this claim. *See, e.g., In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012).

Fourteenth Amendment for malicious prosecution, those claims fail.  *See, e.g., Collins*, 238 F. Supp. 2d at 961.

Plaintiffs' § 1983 claim for violations of the Fifth Amendment also fails.  Because the Fifth Amendment only protects an individual against self-incrimination in a criminal trial, and because Plaintiffs do not allege that the criminal case against them ever proceeded to trial, Plaintiffs cannot state a § 1983 Fifth Amendment claim.  *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003) ("A violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."); *Grooms v. Marshall*, 142 F. Supp. 2d 927, 937 (S.D. Ohio 2001) (holding that the plaintiff's Fifth Amendment rights were not violated when self-incriminating statements were made in the grand jury but were not used at his criminal trial).

The Court therefore is left with a § 1983 Fourth Amendment claim for malicious prosecution against all Defendants.  To properly plead a malicious prosecution claim under § 1983, a plaintiff must allege the following elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision  to prosecute."  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.  Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citations omitted) (footnote omitted).

The Court will address this claim as it relates to the Brown County Prosecutor's Office, Defendant Little in her individual capacity, OIG Defendants Nichols and Charles in their

individual capacities, and ODNR Defendants Logan and Celebrezze in their individual capacities.

### 1. Brown County Prosecutor's Office ("Brown County")

Liability under § 1983 cannot attach unless the defendant caused the alleged injury.  *See, e.g., Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).  Accordingly, when a plaintiff brings a § 1983 claim against a municipal entity such as Brown County, the court must ask whether the municipal entity caused the violation in question.

The United States Supreme Court spelled out the causation rules as they relate to municipal entities in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 692 (1978).  Under *Monell,* "[a] municipality or other local government may be liable . . .  if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell*, 436 U.S. at 691).  If the municipality did not directly cause the injury, then a plaintiff "who seek[s] to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.* (quoting *Monell*, 436 U.S. at 691).  In other words, in order for a municipal entity to be liable for a § 1983 violation, that entity must have caused the violation either directly through municipal action or indirectly through one of its employees following official municipal policies.

Here, Plaintiffs fail to state a § 1983 claim against Brown County under either theory.  Plaintiffs concede, as they must, that Brown County itself did not cause their injuries.  The first theory of municipal liability therefore is not at issue here.

Instead, Plaintiffs identify two policies that they believe caused their injuries.  First, Plaintiffs argue that Brown County violated their rights by having a policy that "allow[ed] the Prosecutor Jessica Little to meet with potential complainants to investigate matters before a decision was made."  (Am. Compl. ¶ 10.)  But that argument confuses but-for causation with legal causation.  Although Brown County's policy may have given Defendant Little the opportunity to violate Plaintiffs' Fourth Amendment rights, the policy itself did not cause the violation.  *Compare Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 498 (6th Cir. 2008) (finding a "direct causal link" between a prison's policy of not promptly providing forms to an on-call nurse and the violation of an inmate's denial of adequate medical care) *with Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383–85 (6th Cir. 2004) (finding no direct causal link between a prison's policy of automatic deference to an outside agency concerning prisoners' medical care and inadequate medical care provided by that outside agency).  To hold otherwise would effectively impose vicarious liability on Brown County for Defendant Little's alleged conduct, which *Monell* prohibits.  *See Graham*, 358 F.3d at 383 (citing *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiffs identify a second policy of "deliberate indifference to training [Brown County's] employees/attorneys" that allegedly caused the violation.  (ECF No. 33, at 4.)  Such a failure to train claim, however, is rarely successful.  *See Miller v. Delaware Cnty. Comm'rs*, 2:13-CV-501, 2014 WL 457552, at *9 (S.D. Ohio Feb. 4, 2014).  Because Plaintiffs do not plead a pattern of violations that would have put Defendants on notice that a training program was necessary, their claim depends on "single incident" liability, which requires a showing that the alleged violations were "obvious" consequences of Brown County's failure to provide specific

training.  *Id.*  Plaintiffs do not offer any substantive argument on this point other than to state, "[t]he law does not require Plaintiffs to have the exact name of a policy but merely to plead the policy as it pertains to the facts at issue."  (ECF No. 33, at 5 (citing *Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008)).

Plaintiffs' failure to train allegations fail to state a claim for several reasons.  First, the reference to Brown County's "deliberate indifference to training their employees/attorneys," (ECF No. 16 ¶ 53), is a conclusory statement that is not entitled to a presumption of truth.  *Twombly*, 550 U.S. at 555; *see also Miller*, 2014 WL 45752, at *9 (dismissing a failure to train claim against a municipality that rested entirely on conclusory allegations).  Dismissal of Plaintiffs' failure to train claim is warranted on that ground alone.

Second, because it is implicit in a prosecutor's job responsibilities that he or she must not manufacture evidence against criminal defendants, there exists no obvious need for training on that issue.  *Cf. Miller*, 2014 WL 45752, at *9 (discussing the Supreme Court's decision in *Connick* and dismissing a claim against a municipality for failure to train its investigators in basic investigatory techniques).  For those reasons, Plaintiffs fail to state a claim for municipal liability against Brown County.  The Court therefore **GRANTS** Brown County's motion to dismiss Claim One.

### 2. *Defendant Jessica Little*

Plaintiffs allege Defendant Little violated the Fourth Amendment by investigating Plaintiffs without probable cause, manufacturing evidence against them and presenting that false evidence to a grand jury, causing Plaintiffs to be unlawfully arrested, and making false statements to the press regarding Plaintiffs' arrest.  Because Plaintiffs did not allege a causal

connection between Defendant Little's allegedly false statements to the media and the constitutional deprivation, however, the Court will address that allegation first.

a.  <u>False statements to the media</u>

As stated above, "a § 1983 claim is premised on the violation of a constitutional right." *Sykes*, 625 F.3d at 308–09.  The constitutional right at issue in this case is the right to be free from "wrongful investigation, prosecution, conviction, and incarceration."  *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003).  In their Amended Complaint, Plaintiffs do not allege any causal connection between Defendant Little's statements to the media and the alleged wrongful investigation, prosecution, and/or indictment.  As such, the allegations regarding Defendant Little's statements to the media fall outside the scope of their malicious prosecution claim.

Plaintiffs cite *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) as standing for the proposition that false statements to the media are tied to a malicious prosecution claim, but the *Buckley* court made no such finding.  In *Buckley*, the plaintiff claimed that a prosecutor's statements to the media inflamed the community and *resulted in* the loss of his right to a fair trial, and the Supreme Court assumed without deciding that the allegations "allege constitutional violations for which § 1983 provides a remedy."  509 U.S. at 261, 277.  That is not the case here, where Plaintiffs do not allege that Defendant Little's statements to the media *caused* a wrongful investigation, prosecution, conviction, or incarceration.

Plaintiffs also assert, without any meaningful argument, that Defendant Little's statements to the media violated their Fifth and Fourteenth Amendment rights.  But for such statements to constitute an actionable due process violation, they must be so arbitrary as to

"shock the conscience." *Miller v. De. Cty. Comm'rs*, 2014 WL 457552, at *7.  A prosecutor's

statements to the media regarding a criminal investigation, without more, generally do not shock

the conscience in the constitutional sense.  *See id.* (holding that a prosecutor's press release

regarding an allegedly flawed grand jury indictment does not rise to the level of a constitutional

violation); *Beck v. Benton*, No. 3:09CV2179, 2010 WL 481254, *4 (N.D. Ohio Feb.5, 2010)

(holding that a police officer's false statement in the context of an investigation does not shock

the conscience).  Plaintiffs therefore failed to allege a causal connection between Defendant

Little's statements and any alleged deprivation of Plaintiffs' constitutional rights.

Plaintiffs' allegations regarding Defendant Little's statements are more appropriately

characterized as a claim for defamation.  Such a claim is not actionable under § 1983.  *Paul v.

Davis*, 242 U.S. 693, 712 (1976).  Rather, defamation is only actionable under state tort law, *see

id.* at 713, and Plaintiffs voluntarily dismissed all state law claims against state actors.  *See* ECF

Nos. 34 & 35, at 2 n.1.  Accordingly, Plaintiffs' allegations regarding Defendant Little's false

statements to the media fail to state a claim for relief.

### b.  Other Conduct

The remaining allegations against Defendant Little fall within the scope of a malicious

prosecution claim.  The question becomes whether Defendant Little is immune from liability for

that conduct under the doctrine of absolute prosecutorial immunity.

A prosecutor is entitled to absolute immunity from liability under § 1983 when he or she

"acts within the scope of [his or her] duties in initiating and pursuing a criminal prosecution."

*Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) (citing *Imbler v. Pachtman*, 424 U.S. 409,

410 (1976)).  To determine when a prosecutor is entitled to absolute immunity, courts look to

"the nature of the function performed." *Id*. (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). If the prosecutor is performing an act of advocacy—such as "evaluating evidence, deciding to bring a criminal complaint and seek an arrest warrant, preparing a case for trial, and examining witnesses (even eliciting false testimony from those witnesses)"—then he or she is absolutely immune from suit, and a § 1983 claim cannot lie. *Miller*, 2014 WL 457552, at *10 (citing *Adams*, 656 F.3d at 401). In contrast, if a prosecutor is performing acts that are investigatory in nature, including "the preliminary gathering of evidence that may ripen into a prosecution," then absolute prosecutorial immunity does not apply. *Buckley*, 509 U.S. at 273.

Here, much of Defendant Little's alleged conduct is clearly immune from suit. For example, Plaintiffs' allegations regarding Defendant Little's decision to prosecute Plaintiffs and her presentation of evidence to a grand jury (even false evidence) fall squarely within the scope of absolute immunity. Those allegations therefore fail to state a §1983 claim. *See id*.

Plaintiffs do not dispute that conclusion. Instead, Plaintiffs argue that, when she manufactured evidence against them, Defendant Little was acting as an investigator rather than a prosecutor such that absolute prosecutorial immunity does not apply.

The Court agrees. Necessarily accepting Plaintiffs' allegations as true and drawing all inferences in their favor, the Court must infer that Defendant Little met with OIG Defendants Charles and Nichols to discuss the investigation into Plaintiffs' activities. During that time— before (according to the Amended Complaint) the decision to prosecute was made—Defendants Little, Charles, and Nichols allegedly manufactured evidence (namely, the OIG investigative report containing false information) and came up with false testimony that Defendant Little could use to prosecute Plaintiffs. Although the Court acknowledges that the Amended

Complaint is light on facts describing the manufactured evidence, it concludes that Plaintiffs'
allegations are sufficient to survive Defendant Little's absolute immunity defense at this stage of
the litigation.

Accordingly, the Court finds that the limited portion of Plaintiffs' claim that Defendant
Little manufactured evidence against them survives Prosecutor Defendants' motion to dismiss.
The Court therefore **DENIES** Defendant Little's motion to dismiss the Fourth Amendment §
1983 claim against her.

### 3.  *OIG Defendants Nichols and Charles*

Because OIG Defendants do not enjoy the same absolute immunity as prosecutors, the
Court must determine whether OIG Defendants can be liable for their role in the alleged
malicious prosecution.  Plaintiffs allege that OIG Defendants participated in the malicious
prosecution by manufacturing evidence, shopping a false report to different prosecutor's offices
and encouraging them to prosecute Plaintiffs, and falsely testifying to a grand jury.[3]

Regarding the latter allegation, the Court agrees with OIG Defendants that they are
absolutely immune from liability for falsely testifying to a grand jury.  *See Todd v. Weltman,
Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 442 (6th Cir. 2006) ("[M]ost circuits, including this
circuit, have held that absolute witness immunity applies to witness testimony before a grand
jury.").  Indeed, Plaintiffs do not dispute that conclusion in their brief.  Accordingly, only the

---

[3] Plaintiffs also allege that OIG Defendants "interfer[ed] in a stigmatizing way with the Plaintiffs'
employment," (ECF No. 16 ¶ 58), but this allegation does not accuse OIG Defendants of any conduct outside the
scope of the malicious prosecution claim.  Plaintiffs allege in passing that OIG Defendants' stigmatizing action
"shock[ed] the conscience," (ECF No. 16 ¶ 58), thereby attempting to invoke the Fourteenth Amendment, but do not
address any such claim in their brief.  *See* ECF No. 34, at 2 n.1 (clarifying that Plaintiffs intended to assert a
malicious prosecution claim only).  Plaintiffs also allege that OIG Defendants interfered with Plaintiffs' right to vote
but, as stated above, do not allege that OIG Defendants were involved with sending the allegedly false report of
convictions to the Brown County Clerk of Courts.  These allegations therefore fail to state a claim under § 1983.

allegations that OIG Defendants manufactured evidence in the OIG report and encouraged Defendant Little to prosecute Plaintiffs remain.

Although these allegations leave several questions unanswered, such as what exactly was false about the OIG report, they are sufficient to state a Fourth Amendment § 1983 claim at this stage of the litigation.  OIG Defendants argue that these allegations are inadequate because they do not allow the Court to determine whether Defendants had probable cause for the prosecution such that qualified immunity applies, but qualified immunity is an affirmative defense, and a plaintiff is not required to plead facts negating an affirmative defense.  *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).  OIG Defendants' arguments regarding qualified immunity for allegedly manufacturing evidence and encouraging Plaintiffs' prosecution based on that evidence are more appropriately resolved at the summary judgment stage.  *See id.*

OIG Defendants' argument regarding § 1983's two-year statute of limitations similarly fails.  In § 1983 malicious prosecution claims, the two-year statute of limitations does not begin to run until after the legal proceedings that are the subject of the malicious prosecution claim are concluded in the plaintiff's favor.  *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 489 (1994). According to the Amended Complaint, the criminal charges were not dropped against Plaintiffs until May 29, 2013, (Am. Compl. ¶ 51), at which point the statute of limitations began to run. Because Plaintiffs filed this case on January 28, 2014, the statute of limitations had not yet expired.

For the foregoing reasons, Plaintiffs' allegations that OIG Defendants manufactured a false investigative report and participated in a malicious prosecution based on that report state a

Fourth Amendment § 1983 claim.  The Court therefore **DENIES** OIG Defendants' motion to dismiss Claim Two.

### 4.  *ODNR Defendants Logan and Celebrezze*

The malicious prosecution claim against Defendants Logan and Celebrezze fails for the simple reason that Plaintiffs failed to adequately allege the first element of such a claim.  As noted above, to state a claim for malicious prosecution, a plaintiff must allege that the defendant "ma[d]e, influence[d], or participate[d] in the decision  to prosecute." *Sykes*, 625 F.3d at 308–09.  To be liable for "participating" in the decision to prosecute, the government official must "participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id.* at 308 n.5.  That requirement is consistent with the general rule that a defendant cannot be liable for a § 1983 malicious-prosecution violation unless he or she was involved in causing the alleged constitutional violation.

Here, Plaintiffs failed to allege active participation on the part of Defendants Logan and Celebrezze.  Plaintiffs claim in their brief that these defendants deliberately refused to testify or provide statements to the OIG even though they knew the OIG's report contained false statements, but such passive conduct cannot form the basis of a § 1983 claim.  *See Sykes*, 625 F.3d at 308–09.  Accordingly, the Court **GRANTS** Defendants Logan and Celebrezze's motion to dismiss Claim Two.

### D.  Claim Seven (Civil Conspiracy under § 1983 against all Defendants)

Plaintiffs' conspiracy allegations are intimately related to their malicious prosecution allegations.  Specifically, Plaintiffs allege that Defendants engaged in a civil conspiracy under § 1983 when they worked together to falsify evidence with the goal of obtaining criminal

indictments against Plaintiffs.

To state a claim for civil conspiracy under § 1983, a plaintiff must allege that: "(1) a 'single plan' existed, (2) [the defendants] 'shared in the general conspiratorial objective' to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury [to plaintiff].' " *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks*, 771 F.2d at 944).  A plaintiff also must allege an actual deprivation of rights, as "the gist of the section 1983 cause of action is the deprivation and not the conspiracy." *Stone v. Holzberger*, 807 F. Supp. 1325, 1340 (S.D. Ohio 1992) (quoting *Landrigan v. Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (brackets omitted)).

Because Plaintiffs' conspiracy allegations parallel their malicious prosecution allegations, their claims against several Defendants fail for the same reasons as those set forth above.  ODNR Defendants Logan and Celebrezze cannot be liable for a civil conspiracy when the only allegations against them involve passive conduct. *See Sykes*, 625 F.3d at 308–09.  Moreover, because ODNR Defendants are not alleged to have participated in the manufacture of evidence against Plaintiffs, there are no allegations linking them to the alleged "single plan" of the conspiracy.  Accordingly, the Court **GRANTS** ODNR Defendants' motion to dismiss Claim Seven.

The Court likewise finds that Plaintiffs fail to state a § 1983 conspiracy claim against Brown County.  As stated above, unless the municipality itself directly caused the injury, a plaintiff "who seek[s] to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 131 S. Ct. at 1359. Although it is true that "a municipality is liable for conspiracy if it, through a policymaker,

agrees to combine with others to deprive an individual of her constitutional rights," *Stone*, 807 F.

Supp. at 1340, Plaintiffs offer no argument that Defendant Little is a "policymaker" for Brown

County.  Absent some allegations tying the alleged conspiracy to a policy of Brown County,

Plaintiffs fail to state a § 1983 conspiracy claim against it.  The Court therefore **GRANTS**

Brown County's motion to dismiss Claim Seven.

 The Court reaches the opposite conclusion regarding OIG Defendants and Defendant

Little.  Plaintiffs allege a single plan between OIG Defendants and Defendant Little to

"manufacture, fabricate, create and/or conceal evidence" during their investigation of Plaintiffs.

(Am. Compl. ¶ 77.)  Such allegations support the inference that Defendant Little and OIG

Defendants shared in the general conspiratorial objective to deprive Plaintiffs of their Fourth

Amendment rights.  And the allegation that these Defendants created false evidence and

presented that evidence to a grand jury is sufficient to support the inference that an overt act was

committed in furtherance of the conspiracy.  Because the Court has already determined that

Plaintiffs' § 1983 claim against Defendants Little, Nichols, and Charles survives Defendants'

motion to dismiss, the Court concludes that Plaintiffs adequately alleged a deprivation of their

Fourth Amendment rights so as to satisfy the remaining element of a § 1983 conspiracy claim.

The Court therefore **DENIES** Defendants Little, Nichols, and Charles' motion to dismiss Claim

Seven.

## III. CONCLUSION

 For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Brown County and Jessica A. Little's motion to dismiss (ECF No. 19), **GRANTS IN PART** and

**DENIES IN PART** Ronald Nichols and Thomas Charles' motion to dismiss (ECF No.25), and

**GRANTS** Sean Logan and Anthony J. Celebrezze's motion to dismiss (ECF No. 27).  Only the allegations against Defendants Little, Nichols and Charles regarding the manufacture of evidence against Plaintiffs and malicious prosecution based on that evidence (including the conspiracy to engage in malicious prosecution) remain pending before the Court.

      **IT IS SO ORDERED**.

                               **/s/ Gregory L. Frost**
                               **GREGORY L. FROST**
                               **UNITED STATES DISTRICT JUDGE**